All rise, the Honorable Judges of the United States Court of Appeals for the Third Circuit. ODA, ODA, all persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished to draw near and give their attention, for this Court is now in session. Godspeed to you, Honorable States, and this Honorable Court. Please be seated. Morning. It is unusual that, in connection with the motion for a state pending appeal, that we would ask for oral argument. We've done so here because there are some issues that trouble us that we'd like to discuss with you, and in the context of doing so, at least give you an idea of what is going through our minds, rather than have some order entered at some point with no explanation, and you're sitting there scratching your head as to why. So with that, let us begin this morning with counsel. Mr. Cooper? Thank you, Judge. Good morning. May it please the Court. Jeffrey Cooper, together with Valerie Roy and Edward Bennett, Rebecca Mantulli, appearing for IDEA Boardwalk LLC, the appellant in the Rebel A.C. Bankruptcy Matter, and with us at counsel table, Judges, is Barbara Ostak, who is the general counsel of IDEA. Let me just see if I can just sort of lay the groundwork for this discussion. Obviously, we've got the four steps to whether you can have a stay. And first is, is it likely to succeed? And we need to discuss what that means. Our court has said there needs to be a strong showing that you are likely to succeed. Whether there's irreparable injury to you absent the stay, whether the other parties, if a stay is given, would be injured, and what is the public interest? And in large measure, you're going to see us focusing on steps one and four. It seems, and maybe you or your opposing counsel can correct us if I've got this incorrect, it seems in terms of there's a few steps that normally you go through without even necessarily reaching the issue of the interplay of 363F, 363E, and 365H. First step is, obviously, the simple one. You need to have a proposed sale, free and clear, of liens and encumbrances. So somebody has to propose that. Step two, is there an interest in the property to be sold that is entitled to 365H protection? So is there an interest? Remember there, the burden would be on you, the party asserting the interest under 365P, to show the priority, the validity, and the extent of that interest. So you'll hear some questions on that. If you meet step two, step three seems to be, then the debtor must show that there's a bona fide dispute with respect to the lease, because they're claiming that they're entitled to sell free and clear under 363F4. So they have the burden there. If step three is met, it seems that the debtor can sell free and clear. That is, dispossess you. But, at least according to some of the cases, if IDEA has requested adequate protection, the debtor must give it, and the burden is on the debtor to show what the adequate protection should be. Now, do you disagree with anything I've said so far in terms of just my decision tree? No, Judge. Okay. And I'll ask the same question of you. Counselor, on the last point on adequate protection, can you tell us when did IDEA actually request adequate protection, as is required as a condition under the statute for it to be triggered? Where is that in the record? Your Honor, I'd have to double check, but I believe when we responded on the Sunday before the hearing in January, which I guess would have been the 4th or the 5th, we, as the record indicates, received the debtor's omnibus reply late in the evening on the Friday following January 1st, which is a week that's a little bit slower in any event, at about 10-14 in the evening. That's come up a couple of times. We, on behalf of IDEA, did file papers by that Sunday night, and I believe in that document, we at least implicitly if not explicitly asked for the adequate protection. But I think that throughout the process of the case, and I would have to defer to the entirety of the record, the issues concerning 365 and 363 came up early in the case. The parties were all aware of those issues. In fact, in some of the very first bidding motions, those issues were raised. So we've been briefing those issues over the course of the case. To answer Judge Krause's question, there was no request pursuant to the statute on 365E? 363E. 363E, pardon me, for adequate protection, correct? I'm trying to recall the hearing before Judge Burns and whether in the context of that hearing the issue was raised. It may have been raised in court on that day. I don't want to represent that to the court, but I believe it was. And I think Mr. Moskowitz was representing what, the amenity? Mr. Moskowitz was representing the buyer. Okay, I'm sorry. Let me go through your hearing. Who was doing the primary argument on behalf of the lessees? No. If I may just say, I wanted to try and reserve five minutes for rebuttal. I don't know what else you want to talk about. That's fine. I think part of the problem of yours is that the hearing that took place on January 5th, I believe, was that Monday? January 8th, right. She postponed it from the Monday to the 8th. No, but that's part of the problem, Judge. On Monday the 5th is the return date for the sale motion. It was not the return date for the rejection motion. And one of the things you did mention in terms of, you know, a predicate to the entire matter was having a 363F sale, but it's also having a timely 365H rejection motion because in Crohn's, for example, the veterans did not ask for rejection until after the sale. So here you had the rejection motion pending when the sale was on, but it wasn't before the court. And what the court essentially did was to, as both counsels indicated, give the buyer the gravy of the 365H ruling in the context of the sale order, when, in fact, the contract of sale did not require that as a precondition to closing. The contract of sale did indicate that the debtor's counsel would use their best effort to try to secure that relief, but if they hadn't gotten it, that would have been not a hindrance to closing. So it's important to see the procedural mechanism. In fact, the rejection motion hasn't yet been heard at all. It's been put off, I think, from last Monday to sometime in mid-February. So that hasn't been heard yet, and it would seem to me that, appropriately, our obligation to- I just want to understand the facts. Was there a motion to reject the IDEA lease? There is now still a pending motion, yes. It hasn't been heard. Okay. So to be clear, if, as I think is the case, the first time that the request for adequate protection is made is at the January 5th hearing, the reason for that being so late is that the first time you received notice that the debtors were seeking to extinguish your rights under 363F rather than through the 365H rejection mechanism was January 2nd. So you were responding to that on January 5th. That's correct. In fact, I would think that, technically speaking, our demand for that protection would conceptually be in response to the rejection motion, not in response to the sale motion. So conceptually, we wouldn't even have had to respond to the rejection motion until a later time. But I understand your point about the requirement. I believe that, at the very least, implicitly, and I think explicitly, we did talk about adequate protection. And, again, we still would have the opportunity. In fact, one of the strange procedural situations, I think, judges, is that we still may have an opportunity to raise adequate protection and a hearing on protection at the rejection motion that's going to take place in a couple weeks. That hasn't been heard yet. So it's a very – what happened is the sale order took on the essence of two different reliefs. One was the sale order, and one was the rejection motion to some extent. The problem we've always had is that it was premature and we had inadequate due process to litigate the issue of the override by 363F of 365H. How do we go about with the issue before us now? How do we go about valuing the interest that you've asserted? Do we do that, as many cases have, as of the date of the bankruptcy filing, when there's still a growing concern? Do we do that as of the date of the request for adequate protection? Or do we look to future returns, as you've asked us to do in the reply? And what is the authority for looking to future returns in evaluating 363E? Let me just take a step back and just indicate that on the record, we have two different citations for value. I will answer your question as to the timing. In the verified complaints that exist, we have a certification that we did put in. The VA placed $16 million into the estate, and in the certification we filed yesterday, we put in information from Mr. Barry that his sense of the valuation was $27 million. So that factual information is in the record. That wasn't before the bankruptcy court or the district court. That certification, correct? I know the $16 million figure. I'm asking about the certification that you submitted yesterday. Was that before the district court or the bankruptcy court? No, Judge, you're correct. That was not. The $16 million wasn't, and the problem, Your Honor, is that we never had a chance to litigate the issue of adequate protection. Judge Burns never addressed it at all. Well, that's part of the reason why I think we were being asked whether or not there was a request for adequate protection such that the bankruptcy court would have known that you had invoked that mechanism under the statute, and that's why that question's been asked. In the context of the sale, was it requested? And it's not clear if that was. As to the $16 million, my question is, that $16 million figure comes from the fact that at the time of the lease, in order to become the lessee, there was an agreement that $16 million would be invested into the facility and any fixtures or improvements were going to belong to the owner anyway. So that $16 million figure was part of the buy-in to be able to participate, and I use buy-in not in a purchase sense, but the opportunity to participate in leasing the property, and any improvements were going to be for possession of the landlord. That's true, Judge. But, again, one of the things that's difficult to respond to is the fact that procedurally we didn't have the opportunity to really argue the adequate protection nor to put evidence in as to value, and so that's one of the key problems in where we are procedurally. We have a situation where we didn't have the opportunity to address a lot of these issues. We heard on a Friday after a holiday a couple of weeks that they were going to raise 363F4 for the first time. Well, actually, in your case, they raised it in the motion to dismiss filed in October, did they not? They raised the issue of the page 14. It's only pages 13 to the top of 15, as I recall. To be precise, Your Honor, yes, they did raise the issue of the characterization of the lease, but it was never adjudicated. There was no objective bona fide dispute. But more critically, they never tied that motion into 363F4 until the Friday. And that's the point that Mr. Schechter was making at the January 8th hearing. That's right. In fact, that's why we were able to respond by that Sunday, because we had obviously looked at the issue of the characterization of the lease, because they had raised it, and we kind of put that off for the time being. But they never raised the F4 issue. And what's critical about that is that Judge Burns didn't find anything with regard to IDEA about a bona fide dispute. She found things about the energy company. She found things about the amenity tenants, but nothing about IDEA. And, in fact, Judge Simandoe said, well, the adversary perceives it, and therefore there must be an issue. But, Judge, I have to emphasize that the declaratory judgment adversaries were raised to declare and enforce the client's 365 rights, not necessarily the lease rights, because if you look at the text, which we quoted in our paperwork, we had to allege as a factual legal predicate that there was a lease pursuant to 365, in order to get the relief under 365D3 in possession of 365H. But you attach to that complaint a letter received two weeks before the filing that is from your adversary, from the debtor, that says, just so you know, we don't think there was a lease. This is a management agreement. You attach that to the complaint. Why isn't it fair for the district court to look at the complaint in its entirety and read it as if there was a dispute, at least facially, between the letter and the complaint that filed less than two weeks later, so it looked like a bona fide dispute to a reasonable person? Understood. And I think your adjective, facially, is important, because facially is not the standard. It's objectively. If I say it's a lease and you say it's not a lease, that can't possibly in and of itself be enough to be a bona fide dispute. It has to be a bona fide dispute on an objective basis. Some courts have indicated there's some basis of evidence, so that here the bankers didn't look at our lease. All the court had to do was look at the lease and see whether there was a lease or not. So that means in the complaint that was attached by your client, you're saying the bankruptcy judge and the district judge should have ignored that letter from the debtor that says there is no lease. First of all, the bankers didn't deal with it whatsoever, and I'm assuming that the district court judge could have reviewed the record and seen that. I think that that mere assertion doesn't raise a bona fide dispute on an objective basis. Anyone looking at it, it would really hinder anyone's ability to contest 365, sorry, 363F4, if someone could just say, if you were, for example, going to sue on a note or on a mortgage, and in the context of trying to enforce it, you said, there's a note in the mortgage, and I said, no, there's not. That's not necessarily in and of itself a bona fide dispute. You need to have some evidence so that the trial or fact can determine whether there's a bona fide dispute in order to really go ahead and essentially begin to eviscerate the property rights of the tenant, because obviously you're using 363F4 as the lynchpin, as your Honor points out, to get to the next steps. Okay. Let me just, before you sit down, ask just a few other factual questions. The district court's decision came down, what, two weeks yesterday? Two weeks ago yesterday? On the 20th? I think the Wednesday, but Wednesday or Thursday. But anyway, why was there no appeal right after that? I mean, I realize there were four groups, as I understand it. Three chose not to seek a state pending appeal of the order denying the stay. And you waited until the next week. Why not file right away? What we did immediately after Judge Domenico's initial decision was to ask him to certify the question of the And we asked him also in that context to stay the stay order so we could then ask you for a continued stay of that. Now, he found in another opinion that we had gone to the incorrect court, given some of the new rules in terms of where you have to go. But he found also that once we had started with his court and asked him for a stay, Once he had dug in, you know, let him know. We told him that we thought, and I think it probably would have been, easier to get the certification as a clean legal issue than to come before your honors with regard to his discretion. But when we began to look into his discretion issue, you have a situation where with regard to 363F4, all he is saying is that the existence of those adversarial complaints is enough to be a bona fide dispute. And we're saying it's not. We're saying we didn't place, in response to your honors questions to us a couple of days ago, we didn't place the characterization of the lease into issue. We said there's a lease of non-identity. You did count six of your May 29th complaint, I thought. When you started the declaratory judgment request. That's what you do, right? If I may, Judge, I don't. What we did, and some of it may have been slightly unlawful, but what we did was we alleged that there was a lease of non-identity property. We said, therefore, because of that, due to that. I'm looking at count six. Okay. We have, unfortunately, four different complaints. The one I have before me is the one dated May 29, I believe. 2014. It was signed by Mr. Roy. Okay. And count six is declaratory judgment lease. Therefore, they seek the declaration of their applicable law, unless the lease, or I guess, I don't know, the capital lease is a lease of non-residential properties. That term is defined in government by 365. And the section title, all relevant statutory protections, including but not limited to 365. And that's where I'm indicating that that lease section may have been somewhat unlawful, because the intent, for example, in part of the declaratory judgment, which we filed, and it's repeated on page five of our most recent papers, talks about the fact that there's a rejection motion. We need to have the court determine our 365 H.I. because we intend to stay in possession. We think we can stay in possession. We've shown how we do it factually in the certification. But specifically, we asked the court to rule with regard to the rights under 365 H. And previously we'd asked the rights under 365 in general, including 365 D3. So technically speaking, we perhaps shouldn't have put the declaration of the lease characterization in the relief requested. But the paramount issue was we didn't contest it was a lease. We simply said it is a lease under 365 and therefore we have rights under 365. Please explain the rights, including, for example, whether, and this issue may well come up, whether the rights of a utility easement is a right in or pertinent to the property, which was going to be a major issue for us to stay in the premises. As indicated in Mr. Barry's certification, we went to the safety people. This lease was entered into, what, May of 2012? Yes. It was a signed IDEA. That's correct. And was that lease ever recorded? I'm sorry, may I just add to that? Sure, go ahead. Was that lease ever recorded? There was a memory on it. That was put on record? Yes. Okay, thank you. All right, let's hear from the opposing counsel. We'll get you back on rebuttal. Certainly, Judge. Thank you very much. Good morning, Your Honors. May it please the Court, Jason Zakia of Wayne Case on behalf of the debtors. I'm happy to answer your questions, but I would like to just touch on a point that counsel ended on with regard to the declaratory judgment action. Why don't we start with just, is my decision tree semi-correct? Yes, sir. Okay. But I think what counsel just said, he said that the prayer for relief in the count, was inartfully worded, and I would take issue with that. I think the prayer for relief in the declaratory judgment count is exactly what one would expect for a party seeking a declaratory judgment. Yes, but the problem is when you have a lease here and you look at page 56 of the lease, it says nothing contained in this lease shall be deemed or construed as creating the relationship or partnership or joint venture between the parties, and agree that neither the method of computing rent, da-da-da, shall be deemed to create any relationship between the parties other than that of landlord-tenant. Yes, sir, and that may be a relevant provision as to the resolution of the bona fide dispute as to whether this was a real lease. Remember, the question before the bankruptcy court, which the district court then reviewed, was not whether or not to recharacterize this lease. We're still looking for an objective basis for there being some factual or legal disputes about the validity of this interest. So take a hypothetical where there's, say, a mortgage, where there's no good faith dispute about the validity of the mortgage, but one party, for strategic reasons, makes some noises about contesting it, and the other side, therefore, goes and seeks a declaratory judgment as to the validity of the lease. If there is no bona fide dispute about the validity of the lease before that declaratory judgment, how would the mere existence of the judgment someone's taking to protect their rights by ensuring that that validity has been affirmed by a court to actions not taken adverse to them, how would that give rise to a bona fide dispute where none existed before? Well, Your Honor, first of all, in connection with this, I mean the question of whether there's objective indication of the dispute is a separate question from the merits of that underlying dispute. So I understand your hypothetical is that you have a dispute in which one party has very little merit to their argument. First of all, that's not the case here, but the bankruptcy court's question before it was, is there a bona fide dispute? The district court looked at whether there was a bona fide dispute. But you're asking us to say that the existence of a declaratory judgment action alone is enough. Is there anything else that you're pointing us to in the record that supports the idea of there being, on the merits, any bona fide dispute about the validity of this lease? Well, on the merits, and I think it would have been referenced in the letter that was an attachment to the complaint, and in terms of the lease itself, what gives rise to the dispute is the fact that the parties shared the costs of constructing the facility. The rent is derived based on the return of revenue from the operations. Isn't that where Judge Ambrose's question goes right to the heart of that, and that is Section 2112 says expressly that those things will not be deemed to change the relationship to that of any kind of That's in the lease itself, which is called a lease agreement and has all the telltale signs of a lease. Whenever you deal with a recharacterization issue, you are obviously going to have provisions in the lease that are inconsistent with what you're trying to recharacterize it at. I'm not suggesting that Judge Ambrose's question doesn't go to a point that is relevant to the resolution of the ultimate dispute. I would suggest that that is not sufficient to eliminate the possibility of a bona fide dispute here, where, again, the declaratory judgment action filed by the appellants constitutionally, in order to assert a declaratory judgment, an element is an actual case of controversy. That presupposes a dispute. The reason they attached the letter to the complaint is to support their allegation. But the flip is, if they were really concerned, they would have made it as count one rather than count six, varying it. I don't think there seemed to be, in their minds, a whole lot of dispute or concern as to whether this was a lease. It was called a lease agreement, et cetera. Were there not complaints filed before the May 29, 2014, complaint? Yes, Your Honor, including in the power bankruptcy. And in rebel one, was there a count similar to count six in the complaint in rebel one? Yes, Your Honor, there was. And those counts in the power bankruptcy were denied in our answer, which is also consistent with the existence of a dispute, a real dispute. In this case, however, what you did, you didn't file an answer, you filed a motion to dismiss, and on page 14 you said that you had some questions as to whether this was a lease. Yes, Your Honor. Mr. Leger, do you agree that the standard of review that we use for the existence of a bona fide dispute here is an abuse of discretion? That is, this is a mixed question of fact and law? I do, Your Honor. And since that's what we are reviewing for, well, these arguments that you're now making, what do we do with the fact that we have neither at the bankruptcy court level nor at the district court level analysis on the merits of these arguments? Well, Your Honor, I think you raise a good point. It's actually a very interesting situation this court finds itself in, because you are reviewing the district courts for abuse of discretion, who is then in turn reviewing the bankruptcy court for abuse of discretion. So did the district court abuse its discretion by not finding that it was likely that the bankruptcy court abused its discretion? So we are dealing with a very high threshold of deference. But we're also dealing with an unusual paucity of facts that are cited in the record below. That is, the district court recognized that the bankruptcy court doesn't even reference the lease, and that the bankruptcy court acknowledged on the record that the debtor had not presented the lease to it for analysis, and that it didn't have any evidence before it of a bona fide dispute. That's on page 53 of Judge Byrne's decision. Of the exigencies of time, the bankruptcy court went ahead and made this determination anyway, that there existed a bona fide dispute without any evidence by its own terms. That is what's reviewed by the district court, with Judge Smendel recognizing that there's not even a reference to the IDEA lease, but that the existence of a declaratory judgment action gave some objective basis to the bankruptcy court's decision. So that leaves us reviewing whether, as it seems you're now arguing to us, the existence of a declaratory judgment action alone is sufficient to establish a bona fide dispute and extinguish someone's rights, their property rights, under 363-F. In the context of this case, Your Honor, where, again, the declaratory judgment action was brought by the party asserting those rights, it's not as if we simply filed a declaratory judgment action, threw it out there, and had the power to create the dispute unilaterally. But when it comes to the merits of the 363-F4 applying, as well as adequate protection on the merits, you'll have the burden. Yes, as to the resolution of whether we prevail on that dispute. And, again, that is a separate question than what Judge Smendel was looking for the objective indicator of, which is, is this a real dispute? This was not a trumped-up dispute that was created in the context of this motion to try and give us a basis to settle free and clear. This is a real dispute that preexisted independent of that and was recognized and supported in the record by the complaint filed by the appellant. But it looks as if what Judge Burns did, prior to recessing and then coming back for the hearing on the 8th and giving her ruling, she was trying to find out from Mr. Schechter and some others, you know, what evidence there was of a lease. And she said, you've given me something and 80 percent of it's redacted, et cetera. Then she comes back and it sounds like she's assuming or presuming or impliedly ruling that we do have a lease. Then the question becomes, as she said, that brings me to what I think is the more difficult part, and that is whether we've met the requirements of 363-F, that is you. And it's difficult because the question in my mind, which was brought up by Mr. Schechter, is whether the debtor showed enough to assert the bona fide dispute in regard to the interest of what I'll call the amenity tenants ACR and IDEA. The debtor didn't give me any of the leases or really any evidence or any really evidence in support of its position, the bona fide dispute, you know, and I'm cognizant that this may have an impact on the unsecured creditors, but I can't decide based on that aspect going on. Even as soon as the last hour, I've gone back and forth. This is during her recess. So she's really concerned about this. My question was in my mind whether the debtors had shown enough to convince me that there was a bona fide dispute. And I know that there's enough that it could be a dispute. I don't know whether it's actually a dispute. And then she says, well, in effect, because time is of the essence, I'm just going to find that there is a bona fide dispute. And I appreciate what she was under, but my first question, I guess, is, was time really of the essence on January 8th when we still haven't closed on February 6th? Well, Your Honor, whenever the sale order was entered, the closing was under the terms of the asset purchase agreement to have occurred 30 days later. That was the deal? Yeah, there was a 30-day window within which to close after the sale order was entered. But a window, you could close the next day if you wanted to, right? But it would be us and the buyer. So the buyer had the 30-day period. So it wasn't going to be within our control. We need to get the sale order entered so as to begin that commodity. Just so I understand, so you have 30 days to close, but you could have closed technically or theoretically the next minute? Yeah, to be honest, if the buyer was ready to close the next minute, the debtor would have been happy to have done so. Because usually when I went through this in your position, I can remember one time we closed. We had approval Friday night at 5 o'clock, and we closed by 2 o'clock in the morning on Saturday morning. Correct. We didn't have the ability to force that. The buyer has that 30-day window that is their contractual right, and we had to get the clock ticking on that. If I could back up just, and I want to address all the Court's questions, but one thing to put this in context because it does go to the time sensitivity. This case was filed in June, and the expectation and the hope was that we would have a sale by the end of the summer. Obviously, for the reasons that you raised. And then they would have shut it on September 2. Correct. And remember, we have a situation where we're continuing to burn through money every day. We have a dip lender that is funding this case to try and allow us to have an orderly sale as opposed to the alternative, which would present a disastrous scenario of having no funding or free fall of the Chapter 7 trustee, having to, I guess, pull the TVs off the wall and start selling them on the lawn. And, you know, the ability and the willingness of that lender to continue to lend, months and months and months longer than originally anticipated. You know, we're now at a point where the dip lender has lent $70 million when their initial preposition position was $75 million. That's much more. So I think when Judge Burns was speaking about the need for time, she was cognizant of the fact that as the debtors continue to burn through money, the ability to consummate an orderly sale through this process, the window is narrowing. And so I think that's why she saw the need to get that 30-day collective. But she also, now she went away right after the 8th for a while, is that right? Could somebody, she was the one that's been with this case from the beginning? Yes, sir. Okay. So she was gone how long? She said she had to go away for a short period of time. I believe she was gone for a week. Okay. But I don't think that that's what was driving her. No, I'm not suggesting necessarily it was, but she's. You were starting to touch on, like you were starting to talk about issues of irreparable harm. Yes, sir. You were starting to describe something that you say would befall your client should the sale not occur, correct? Yes, sir. How do you address the fact that if the sale proceeds, there will be assets collected, but that there is not a strong likelihood there will be any assets to satisfy IDEA? Why doesn't that cause them irreparable harm? While it's compensable with money, is it collectible? And should we be concerned about that in doing an irreparable harm analysis as it relates to their irreparable harm rather than yours? To address that point, Your Honor, I think two points. One, we don't know. If there is a sale, under the terms of an agreement reached between the secured lenders and the unsecured creditors, there will be some money left behind for the unsecured creditors. Just the $1.5 million? $1.5 million. For all general unsecured creditors? Yes. So I'm not suggesting that that is. What's the amount of claims so far? I do not know the amount of the general unsecured claim pool. Would you just take a guess? It's going to be big. So the $1.5 million, I'm not suggesting, is going to be a large recovery on those claims. So if, for example, you said that adequate protection, once they request it, or if they request it or once they request it, the rejection damages would equal their adequate protection? Yes, Your Honor, but I think we have to look at what their possessory interest is. It's almost like that zero, isn't it? We've gotten close to it. Well, we also don't know what the avoidance actions will bring in, what other potential assets, but there's certainly a high degree of risk associated with the unsecured claims. But that really doesn't make any difference because it's going to all be eaten up by the secured debt, unless there's a carve-out, which I guess there has been a carve-out for $1.5 million. $1.5 million, I believe there's also a carve-out for, well, the avoidance actions, the bankruptcy avoidance actions will not be encumbered by the loaners. Not encumbered by the DIP lender? No. Now, the lenders do have deficiency claims, which we'll share in some of those, and there is an agreement, I believe, between the committee and the DIP lender as to which ones the lenders will or will not waive their deficiency claims in. But the avoidance actions, the bankruptcy avoidance actions, I believe, will be available for unsecured creditors. But all of that. Well, we don't, at this point, know whether they'll bring anything in, and if so, how much. The question then becomes, in part, back to Judge Wirtz's question, is let's assume you dispossess them. Let's assume they make an adequate protection or 363E adequate protection claim. If all you're saying is, and what you say in your brief you filed this past Tuesday, the rejection damages will be that, which means they participate with other unsecures, some portion of $1.5 million and maybe something else, then aren't you smack dab into what the D.C. court said in the Southern District of New York, which is, look, if you can't really give them much of anything and it's hard to value their interest in any event, isn't the simple answer that the adequate protection is to let them stay in possession? That certainly was the D.C. court's way of reaching the result that it reached. I think that we have to be— Well, it was its way of trying to deal with the so-called irreconcilability or non-reconcilability of 363F and 365H. Correct. That's a more articulate way of saying what I was trying to say. So we have to look, I think, in the context here, and I think Judge Samandl looked at this and analyzed this. What is the possessory right that this party has? But to keep in mind, they have no possession. The facility has been closed since September, and due to law, they're not in there. They don't have possession, but they have a right to possession if they qualify under 365H. If they qualify under 365H, they have an interest in the property, a possessory interest in the property if they qualify. They certainly have an interest in the property. And if there's not adequate protection provided monetarily through the 363F and E, right? Then possession is—possession or its indubitable equivalent is what's required. Right, but here, Your Honor, if we look at their interest in the property is a right to possess a shuttered, closed building that is not operating, that has potentially no power. If we look at the scenario, and this goes to the balancing of the harms, which I would submit the balancing of the harms is something that the district court has the discretion to do, and that also has to be reviewed for an abuse of discretion. If there is no sale, they are in just as bad, if not worse, a position than if we sell free and clear of their possessory interest. Well, they've put forward in their reply and the attachment to it certification and evidence that we may not be able to consider under our rule of appellate procedure 10A, but suggest that they could operate independently, that they've been seeking to do that, and they even have independent ingress and egress to the street for the public. But given the timing and exigencies here, that was not presented to or considered by a court below. Wouldn't that change the calculus for the value of the leasehold interest, and shouldn't that be considered in the first instance by the district court? Well, if the appellants had offered that evidence to Judge Simandole, I'm sure he would have considered it in balancing his harms. I mean, I would have countered, had they done it at that court, that they had filed a motion for temporary restraining order seeking to regain possession of the property, making all of these allegations back in September right after the property closed, and from then until today, none of those regulatory approvals or any of the things they said they were going to do have been secured. But that was not presented to the district court. He was not given the opportunity to weigh that in exercising his discretion as to the balancing of the competing harms, and I think it's both procedurally improper and fundamentally unfair to the district judge to challenge his exercise of discretion on the basis of information that he never – it's not that they asked him to consider it and he refused. They never attempted to present it. Judge Simandole gave us, I believe, five hours in a hearing. Yes, I'm sorry. Why would we value the leasehold interest after the debtor has made a decision to close the doors, as opposed to at the time of the bankruptcy filing, which is where it seems the majority of cases choose as a point in time for valuing the interest at issue for adequate protection? This adequate protection scenario, Your Honor, is factually different than your typical adequate protection scenario. We're not dealing with a lien and valuing how much money was owed to a secured creditor as of the petition date. That's kind of an exercise that you pick a date, you value it, and you say, okay, this is what their interest was. Here, when you're trying to determine what it is that you're going to protect, I think that adequate protection has to be judged in that context, and I understand it's different than in other contexts, but at the time that we're actually dealing with making that determination. So when they ask for adequate protection, I think in this context you'd have to look at what they had at that point. It's impossible for us, even if we gave them what the district court said they should get, and we gave them possession, we can't give them what they had at the petition date. It's not possible. If you use that approach, though, you're putting in the hands of the debtor the ability to not only extinguish her right under 363-F, but to make it valueless by closing the doors so that adequate protection at zero dollars is satisfied. Did Congress really have intended that in the precautions it seems to have taken as to using a concept of possession or its indubitable equivalent in what is done with 363-E as well as 365-H? When you talk about the indubitable equivalent, it has to be the indubitable equivalent of what exists, and at this time the reality of what exists is a closed revel. The measure, if I can just cross this question apart, was when is the date of valuation, date of petition, date of sale, or date of formal dispossession or whatever you want to call it. I think that's what we're trying to figure out. Date of rejection, whatever. Yes, Your Honor, and I guess my answer would be in this unique factual circumstance when you're dealing with possession and not, say, valuing a lien, when you're dealing with possession, I think it has to be as of the date that you're judging that adequate assurance because you have to give them the indubitable equivalent of what they have at that point. Unlike a number on a page, we can't give them possession of something that doesn't exist anymore. And is it your view, though, that the adequate protection, following your thought, would be judged on what would adequately protect based on the time you asked for the adequate protection? Yes, Your Honor. So in this instance, since we're not clear, if adequate protection was ever sought, from your point of view, if it's sought tomorrow, it would be tomorrow's value. How can you judge it at any other time other than when you ask for it in this context? Because here what you're doing is trying to give them the indubitable equivalent of a right of possession, and that right of possession, I think, can't be meaningfully valued as of a past state of affairs that no longer exists. Now, obviously, if there were a factual scenario, which I would suggest this certainly is not, where the debtors took some action with a specific intent, some malevolent intent to target a particular creditor, that may be something that the court's equitable power could address. Here, it really is the economic realities that drove this closing. Let's go back to the factors for the moment. You've got a bankruptcy judge who said just before coming on the bench, I'm going back and forth. Close decision, yes, sir. Very close decision. And Judge Simando, you know, very, very good judge, saying, look, this is like an equipoise. I don't know. It can go this way, it can go that way. It's right at the tipping point. Why? That has to be a substantial likelihood of success on the merits under the first factor. Has to be. I never like to disagree with a court. I would suggest, Your Honor, that Judge Simando was correct. It is, he found. You think likelihood means greater than 50%? I'm sorry, Your Honor? You think likelihood means greater, a strong likelihood means greater than 50%? Yes. Second Circuit doesn't. In this circuit, it is a strong likelihood. It's a, what does that mean? Second Circuit uses the same, Judge Newman used the same language. He says, but it can't necessarily be 50% in the Reno case. Because if you've got to show that you're going to win, just to get a chance to show that you're going to win, it doesn't make any sense. In other words, you've got to show you're going to win before you can even get to the point where you can be in a court to hear the merits of whether you win. It doesn't make sense. It's not logical. So, I mean, the case that you're talking about from the Third Circuit talks, basically paraphrases what the Supreme Court had said, you need a strong showing of the likelihood of success. Yes. That was the Supreme Court's language. And that's what we adopted in Judge Newman's opinion. But why not take the next step and say, hey, folks, just so everybody understands, it's understood to some extent, just like you have in the immigration context, where you talk about a reasonable likelihood of success. It isn't 50%. Once you show reasonable likelihood, you get to the next step. Once you make the strong showing of a probability or likelihood of success, you get to the next step. You get to prove your point if you get beyond the other three reasons that don't in the state factor analysis. And I think that's a very important point. We'll get to those. But the point is, to me, logically, it cannot be that they have to show today that it's greater than 50% chance that they'll win. I'm just talking logic. Okay. Are you familiar with Judge Newman's decision? I generally, yes. Okay. I mean, it's probably the most in-depth thing that I have seen. It's at 309F395, and he talks about this on pages 100 to 102. And it ends up on page 102. If the likelihood were more than 50%, the appellant would be required to persuade the state panel, who is more likely than not to win before the merits panel, just to obtain the critical opportunity to maintain the status quo until the merits panel considers the appeal. So just taking Judge Simandl's point that this is an equipoise, this first factor tilts in their favor. That's my view. Now, the thing that really helps you, it would seem, is the last factor, the public interest. And basically we're talking jobs. Yes, sir. There were how many jobs before this place shuttered? I believe there were approximately 3,500. Okay. I saw 4,000, so we'll say 3,500. How many jobs are we talking about if this place reopens? It sounds like we're talking about a significant downsizing based on what I've seen. It is obviously not within our control, and so we would be speculating. It's certainly going to be far more than there are now. I could not promise the court it's going to be up to the buyer as to how they want to use the facility. But I believe it would still be a very significant number of jobs. It would have an operation at the facility. Remember, Atlantic City is suffering from the fact that many of the casinos on the Boardwalk are being shuttered. So any amount of activity that is brought back to that is going to help that. I guess this issue may be bigger than all of this. Yes, sir. And, you know, I think the buyer's counsel at the stay hearing before Judge Simandoe made a point, the public interest standard is so often thought of as, I guess, a throwaway. It just kind of gets thrown onto the end. In this case, the public interest requirement is really implicated here. It is extremely important. And it does also, I would submit, tie into the balancing of the harms because the same factors that weigh in the public interest in favor of denying a stay and not standing in the way of a sale also speak to Revell, and by Revell it's really the creditors and its creditor constituencies, the harm we would suffer if a, you know, that third prong. The second prong is really theirs because if they don't get the opportunity to look at the merits here, then it looks like they're dispossessed, they'll probably never get to the merits. So they seem to have met the second prong that there is irreparable harm to them if we don't stay pending a final determination of this tension that people think exists between 365 and 363. Right, but if we look at how Judge Simandoe analyzed that, I think there is wisdom in his approach, which is if we look at what they get if they win and if the sale does not go forward. I think you're right. They might not get anything, but they also claim that they can operate, because they have operated in the past, their club, their restaurant at a profit. They weren't the problem. And we're also speculating as to what would happen. The substantial harm that you've asserted is that the sale may fall through with the consequences of that. But the actual APA, the agreement that both the buyer and seller were willing to enter into, did not provide for a sale free and clear of this leasehold interest. So why wouldn't a reversal of the denial of the stay or effectively a grant of a temporary or narrow stay as to this interest, why wouldn't that simply restore the status quo to what the buyer and seller actually agreed before there was this last-minute request to extinguish the right of the leaseholder for the sale order? Two answers to that question, Judge Cross. First, I think you touch on a very important issue, which is the scope of the stay. The stay as it exists today, as entered by this court, actually would give the buyer a very strong argument that Revel had failed to meet its condition precedent to close, because the stay as it exists today prohibits the sale. And if we are not in a position to consummate the sale by Monday, and if that is the fault of Revel, because we failed to secure the necessary approval because we have a sale order but it has been stayed, that could very well be seen as a failure of a condition, which would give the buyer the opportunity to walk, retain his deposit, and walk scot-free. So the stay as it exists now creates an even greater danger than I think what you, Judge Cross, were talking about, which is the possibility that I think they indicated that they were amenable to a more limited stay that stayed only the effectiveness of the free and clear language of the sale order. I do agree that if the stay were modified so that it was only addressing the free and clear language, that would not be a breach on the part of the buyers. We did negotiate for, these are commercially reasonable efforts to sell free and clear, but it is not a breach of the contract for us to have failed in that effort. So you are correct. But the way the contract is set up, it is effectively an option. So the buyer- Is that in the sale order? What you just said, is that in the sale order? Which part, sir? Where it's not a breach of the contract to condition a stay? That is in the asset purchase agreement. In the asset, what page is that? I will find that for you, Your Honor, I'm sorry. That's fine. Okay. So the asset purchase agreement provides our commercially reasonable efforts. It is not a breach if it were only the provision of the sale order. But what the buyer told the bankruptcy court and what the buyer told the district court, and which the district court decredited, because I think the district court was trying to look at the reality that we face ourselves in, is if the staying of this language, if this provision is important to the buyer, they would have the option of walking away and leaving behind a $10 million deposit if the stay were the more narrow stay, since we're not in breach of the contract. They would have to give up their $10 million deposit if they walked away at that point. So you're saying that whether it's a full stay, and your client would not have needed to condition precedent, or it's even a partial stay where you have reason to believe, based upon representations to two judicial officers, that the buyer probably won't go through if it's not free and clear. Either way, you think that the sale falls apart. Yes, Your Honor. Is that kind of your bottom line position? Yes. Am I overstating what was said to the district courts or the bankruptcy court by the buyer concerning what their view would be if the free and clear language remained? You are not overstating it. I do want to be clear. It was not a guarantee. The statement that was made to both courts is that it was very likely that they would choose not to proceed with the sale if they did not have the right to dispossess these tenants. But you're down to this one, which I assume were – of the four groups of tenants, which was the most important group as far as you were concerned and as far as the buyer was concerned. It sounds to me like they were Mr. Schechter's clients. I do know that the buyer is very concerned about these parties as well. It is very important to the buyer that he have the ability to control who's in his property because he sees it – and I'm going beyond what he said, but I'm just trying to answer Your Honor's question. He sees it as interfering with his ability to how he wants to brand the property. There's a way to deal with that, you know. That changes the sale price, Your Honor, which may cause them to walk, which may leave us in a very bad situation because – Or show you work something else out. I mean, there's – you're limited only by your creativity on this. Well, unfortunately, that's not entirely correct. We are also – I'm not necessarily you. I'm talking about the buyer. We are limited by the economics of the situation where we have a very – it's been very difficult to sell this property. There is very little room for any further concessions and to let the sale go forward, and that's basically what the buyer – How much do the secured lenders owe? The secured lenders are in excess of $400 million. That's all the secured lenders, and that's just what's part of it. This property, what, a couple years ago was valued at, what, $2.5 billion? Yes, sir. In fact, when I heard counsel talk about the $16 million cost, there's one thing Revell has taught us, is that what it costs, there's no relationship to what it's worth. This building was constructed probably all in almost $3 billion three years ago, and we are desperately trying to close the sale at $95 million. It is – and so, you know, and we made this point to the district court. We're not – I mean, the argument is, you know, like maybe last summer, we have a melting ice cube. Well, now you've shuttered it, and the ice cube has melted. It makes sense. We are trying to salvage whatever there is to at least allow some recovery for creditors and to allow some opportunity for this to return to a functioning and productive asset, and our fear is having all of these efforts to try and sell this property over all of these months, if we don't succeed this time – and yes, Judge Groth, I am speculating to a certain degree that that's true, but all of the evidence in the record shows us the huge risk that if this falls through, we end up with a disastrous situation where we can't even go to court. That was the argument that had been made last fall when Boardwalk walked to the pew to the buyer then. Yes, and we tried very hard to get them to not walk, and now think about how hard it is to sell when two parties have walked away from – if the court were to modify the stay and they were to walk away from the deposits, two parties have chosen to walk away from this property. The lack of funding and the difficulty of the sale, having tried for so long, leaves us with a very real risk, which is not just a risk to the debtors, not just a risk to our creditor constituencies, but also to the city of Atlantic City, the state of New Jersey, that this huge, potentially valuable asset just becomes a cavernous hole. I guess the point is it was valuable. It was perceived as valuable. You put $3 billion in it at one point. It was worth about $2.5 billion. At this point, no one wants it other than for a song. And someone buying it for $95 million is infinitely better than the alternative available to us at this point. What about the – Mr. Cooper said that in his brief that there was a secured lender who possibly had someone to come in. Has that been pursued? We have pursued it at every angle. He referred in his brief to the possibility of Hard Rock buying this, and again, this is outside the record what he said, so I'm going to respond outside the record. Hard Rock is willing to manage the property in connection with another buyer. They're not going to buy this. Council, if we put this in stark terms as to the issue before us, if we accept that the third and fourth factors that we consider for a stay, including the public policy one, are strongly in your favor, but when we look at the issue of likelihood of success on the merits, if you assume with me for the sake of argument that there has not been, at least on this record, a demonstration of a bona fide dispute as to the validity of the lease, or even if there were, so that 363F were satisfied, and we then need to look at the question of adequate protection, what has been laid out for us suggests that without possession, that there are no meaningful dollars that would be available to satisfy 363E to provide adequate protection for this leaseholder, then aren't we left with a sale that on its face would be unlawful under the bankruptcy code because it doesn't satisfy 363F? I would respectfully suggest, Your Honor, in the scenario that you laid out, if we assume those things to be true, you would be in a scenario where one of the factors, the likelihood of success on the merits, weighed in favor of a stay, and the question before this court would be to look at the district court's decision and judge as to whether the district court abused its discretion in weighing these competing... One could make an argument that's fairly easy to do because the bankruptcy judge said that you, the debtor, have given me nothing to show that this is a bona fide dispute, but when you look at pages 52 to 55 of the transcript, because it's so much time, so expedited the time, and I'm just going to find that you've met it, that this is a bona fide dispute. One could argue that's an abuse of discretion. And that's just on F4. On the adequate protection point, adequate protection isn't even mentioned, much less any findings made at the bankruptcy court level, and then when that goes before the district court, the district court recognizes that there's been no discussion or analysis of this mandatory requirement under the statute. Once the request is made of prohibiting the sale or conditioning the sale on adequate protection, and nonetheless finds that by making a finding as to 363F, the bankruptcy court must have been considering 363E, although it's not mentioned. When that's all we have before us, and we're reviewing for abuse of discretion, how could we say that that was not an abuse of discretion, given what's required as far as findings under the bankruptcy code? I think there are two things, and if I could, Judge Ambrose, your recitation of the bankruptcy court's finding, while I certainly agree she said all the things you said, I think there were, she did say a bit more, and I will acknowledge she did not specifically reference this particular appellant when she did say a bit more. Remember, at that time she was dealing with multiple parties. She did come back, and she did make findings based on the pleadings filed by the amenity tenants. She did make findings based on statements that, sorry, her experience in other related litigation in the main bankruptcy case. On page 53, my concern is, as she said, without knowing any more, I know enough to say that there could be in dispute about whether it's actually a true lease. And F4, doesn't the court have to say, not could, but actually that there is a bona fide dispute? Yes, Your Honor, but I think if we look, and now we can look, and this gets back to the discussion I had answering Judge Krause's question, and I do acknowledge that we do put great weight, the district court put great weight on dependency of the adversary, of the declaratory judgment action filed by them to establish the bona fide nature of the dispute. If there is sufficient evidence in the record, and that's something the court to judge cite, to support a finding that there was a bona fide dispute, that is sufficient to support that finding, whether or not Judge Burns specifically referenced it in her ruling. Well, I mean, the only thing she really relies on is on page 54, the debtors rely on the amenity tenants to provide their signature dining, nightlife, spa, and retail experiences. Because each of the amenity tenants are actually located on the debtor's premises, they in turn rely on the debtor's operations. The amenity tenants are, in every sense, partners of the debtor for better or worse. That doesn't flow. My point when referencing those is she did give analysis, and she did give reasons. The reasons that she gave on the record referred to the amenity tenants, and it referred to ACR. But the fact that they happen to be on the premises, and they happen to make certain operations on the tenants, doesn't make them for better or worse partners. No, I believe she was quoting from statements made by the amenity tenants in amenity tenants' pleadings. Those are other parties. Those are other parties in any event. No findings as to IDEA. There's no reference to statements made by any representative of IDEA. How can we transfer whatever might have been said about others to IDEA to apply under 363? I'm sorry, Laura. I'm not suggesting you should. I was just trying to answer Judge Ambler's question about whether she did give any thought to any of the issues. More just for the context of Judge Burns' decision-making process, I do acknowledge that the specific examples she gave and what she listed in her ruling did not apply to this appellant. I would suggest that because there was the declaratory judgment on file, because that was in the record, that is sufficient to support her finding regardless of the fact that she didn't specifically mention it. Well, let's just go to page 55. Close that up, and then Judge Corsano wants to ask a question. She says on page 55, the court does not have to make a ruling as to whether the bona fide dispute actually exists, just that there's what the dispute is or how detailed, but at least whether there's a bona fide dispute that exists. It doesn't make any sense. So the court does not have to make a ruling as to whether a bona fide dispute actually exists, but at least whether there's a bona fide dispute that exists. I think she meant could exist, because that's what she said on the page before. If that's what she said, whatever that's correct, that flies in the face of what needs to be done under 363F4. The court must make a determination, not that it exists, that such interest is in bona fide dispute. Your Honor, I would offer alternative explanations to what she meant, and obviously this is the danger of oral rulings as opposed to written opinions. What I interpreted Judge Brent's meaning when she said that is she does not need, in connection with determining the existence of a bona fide dispute, to adjudicate the merits of that dispute. She doesn't need to determine that the debtors are correct and this lease really is a joint venture of a management agreement. She just needs to determine whether the dispute exists. Now, she was speaking more generally. It was regarding all the parties, not just this one party, but that's how I interpreted what she meant to say, because she did acknowledge, and I do agree it's not perfectly worded, that she does need to establish that the dispute exists. I think she misspoke in the first part. In effect, what Mr. Cooper is saying that, look, at the last minute, for at least the other parties, not so much necessarily IDEA because it was brought up last fall, but with respect to the other parties, that on Friday night, late Friday night, January 2, you now say that you've got a 365-F4, and that looks like a tactic. Your Honor, I think the fact that the dispute existed months earlier and was embodied in a pleading file by them, not by me, shows that it is not a tactic. The reason that issue came up late is that it is... In fact, that's the only thing that Judge Samantha relied on, right? Well, I think that that is an excellent objective indicator of the existence of a bona fide dispute. To hold that that alone would be sufficient for a bona fide dispute, in essence, punishes parties who seek to proactively protect their rights by filing for declaratory judgment. The message of that holding would be, wouldn't it, that if you go and seek a declaratory judgment to ensure that your rights are prospectively protected, that you are thereby subjecting yourself to a bona fide dispute that may extinguish your rights under 363-F? Your Honor, I think that's part and parcel of the inclusion of F4 in the list of factors that satisfy the statute. If you go to court and you file a declaratory judgment seeking judicial resolution of an issue, you are, I would submit, affirmatively alleging, subject to Rule 11, that there is a dispute as to that issue. That is an element of a claim. In order to have, under the Constitution, a declaratory judgment, an actual case or controversy. It's a very good answer, but it might also mean that what the court has to do is take a step beyond just the fact of the filing and actually look at the papers and any other evidence in the record to establish objective evidence of a bona fide dispute. At this point, we'll go ahead. I'm sorry, but just two things. One is, in this case, you're saying there's also the letter that your client raised this issue. Yes. They attached to establish the bona fide dispute, which is an element of the claim that they filed. Okay. Which is why they did it. What I wanted to follow up was, I think Judge Krause had, and if you were about ready to answer the second, as part of your, I had two things to say. Oh, I'm sorry. Judge Krause had asked you if there was a concern that the irreparable harm fact, the likelihood of success on the merits factor has been satisfied by your adversary, hypothetically. Yes. And I believe what the judge was saying was that if they did so in such a way, that gives some indicator that there could be a sale that contravenes the statute. Does that mean we put that factor aside and still allow the other factors to allow the sale to proceed, meaning deny the stay, even though there may not be a showing of irreparable harm by the move-in? There may be injury to the public interest. There may be harm to other parties. I think her question was, do we ignore the fact that if the sale potentially is in contravention of the statute, but we nonetheless are going to let the sale go through, how do we allow that to occur? I guess that's my point. I think, Your Honor, the answer is that I would submit it would be within the district court's discretion to balance those factors. And if you had one factor weighing in favor or strongly in favor of a stay, the district court has to weigh those factors and determine whether to impose a stay or not. And if we assume that one out of four factors favors a stay and two or three of four factors weighed against a stay, I would submit it is not an abuse of discretion for the court to deny a stay under those circumstances. In this circumstance, under our case law, you have to satisfy all of them at the move-in to get relief. Just like if you were an injunction, Your Honor, and you had a very high likelihood of success on the merits, but no irreparable harm in the injunction would be denied. It happens all the time. Thank you. If I can just get at that question another way. If we take, again, as a hypothetical, that factor one is 100% clear. If we assume for argument that neither 363F4 nor E are satisfied, so that the sale is not lawful under the bankruptcy code, to that extent you'd agree. If those are not satisfied, the sale is not lawful under the bankruptcy code, right? I would phrase it differently, Your Honor. If I assumed that the bankruptcy court erred, I believe it would be lawful because it would be authorized by the court order. That court may have erred in granting that order under your hypothetical scenario, and then we look at 363M, which speaks about what the consequences are of a sale closing on the basis of an order that was an error, and Congress made the decision in adopting the statute that, you know, in balancing its own competing interests, that the finality of the sale would trump the fact that mistakes might be made. Well, we get into mootness issues at that point. Yes, Your Honor. But if we're looking at a sale that is going to take place, and the mandate of E, that it shall be prohibited or conditioned on the protection of adequate protection of the interest, if requested, if those are not satisfied, then at least 363F and E, you'd agree, would those not satisfy that prospectively the sale is not authorized under the terms of the bankruptcy code? I don't mean that, Your Honor. I would agree that if the court improperly, if your assumption is correct, the order authorizing the sale would have been in error. Okay. So... I'm just drawing a distinction. I don't think it makes the sale legal because there's still an order. Understood. So if we're clear on the sale order being in error with those hypothetical conditions. Yes, Your Honor. Okay. So all the other factors go your way. How would a sale order that would constitute legal error, how could it be anything other than an abuse of discretion to deny a say and address the merits under those circumstances? If you had a situation where the sale order was plainly in error under the terms of the bankruptcy code. Because, Your Honor, the standard the district court is required to apply under the law of the circuit is a multi-pronged test.  I would submit it exactly as if a party came in for a preliminary injunction for a temporary restraining order and established a high likelihood or a certainty of success on the merits and failed to meet the other requirements. That motion would be denied. But haven't we said in Jackson v. Danburg that it's an abuse of discretion that we found where the conclusion reached by the district court includes a serious error of law? In other words, that factor on the merits, the legal merits, is one that could suffice itself to satisfy abuse of discretion. I believe that at least the overwhelming majority of the law on this issue in the circuit speaks to the multi-pronged nature of the analysis. And I would submit that one factor... That's where the Second Circuit would agree as well. I mean, if you have one that's strong, if you have a really good case in the first thing to beat it, you have to show on the next three prongs, or at least some of the next three prongs, that it counteracts it. Right. So the more one weighs, the less you have to show the other, and vice versa. But in this hypothetical, and there are lots of parts of Judge Krause's hypothetical I don't like, in this hypothetical the parts that I do like are that we can assume that the other three factors, there's nothing. Well, the second factor is they are hurt irreparably if they don't get a chance to deal with the merits of an issue that, for the purposes of this assumption, they're likely to win on factor one. And what do we do moving from that hypothetical to what we have here, where the court below simply didn't engage at either level the actual merits of either the 363F4 or E, as to whether there was sufficient evidence in the record to satisfy those parts of the bankruptcy code? I think with regard to 363F4, the court found that there was an objective basis for the existence of the dispute. And I understand we're drawing a distinction between the existence of the dispute, which is what I submit, all that's necessary to require the statute, and the likelihood of success on the merits of that particular dispute as to whether or not the debtors would be likely to prevail on that issue. With regard to adequate assurance, I think what the court, the district court did, is it looked at the alleged possessory right, and it, in the circumstances presented in this case, and it found that there was nothing to protect. The IDEA has not yet asked for adequate assurance, and they can at any time under 363E. They have to make a request. I think it's what 363F says, at any time. So they haven't done it. At the hearing before Judge Burns, had any of the other parties made a 363E request, so that if you rule against this judge, we are asking for adequate protection? I can't speak as to what they may have included in their papers. I was at the SAIL hearing. My recollection is adequate protection was not mentioned by any of the parties at the SAIL hearing. At the January 5th hearing? Yes. Adequate protection was not mentioned? I don't recall that. Perhaps in responding, we can be cited to the pages where that is raised. Also, when you sit down, if you can refer us to the provision of the APA that you were talking about previously that shows that you get your $10 million if there is a certain type of limited stay, but not if there is a full stay. Can you, on that score, to the extent it's something that we consider, what phrasing as to a more narrow stay would you propose that would protect the interest of the debtor to the maximum extent in the context of some protection of the leasehold interest? To be clear, Your Honor, we submit that to protect the debtor there should be no stay. However, yes, the language that would bolster our position that if the buyer chose to walk, we could retain a $10 million deposit, we would have to be clear that the SAIL could proceed and that neither the SAIL order nor the SAIL itself were stayed. If there were language in the order that said the effectiveness of the free and clear provision alone, I think there's one paragraph in the order I gave you the number, if that were stayed, our position is that while that still would cause great harm to the debtor and put us at great risk, that would mitigate that risk to the tune of $10 million. Did that answer your question? Yes. Thank you very much. Thank you. Oh, and Your Honor, just to mention, I wanted to be responsive. We had made in our papers some jurisdictional arguments. The court didn't have any questions about that. We're not abandoning those arguments. I just wanted to be responsive. Very good. Thank you. Mr. Cooper? Thank you, Judge. Just to clarify some of the mechanics as to what happened between hearing on the 5th and hearing on the 8th. I don't know that it's in the record. I'm sure it's not in the record before, Your Honors. But the reality is that the parties were asked to try and negotiate the terms of the SAIL order so that it did not include the 365H issue. And I don't know if it's appropriate to go into any of the settlement discussions, but the parties did talk about the only party that wouldn't accept that, not surprisingly, was the buyer. So when we ended up back in court on Thursday, the judge was sort of faced between a rock and a hard place because the buyer wouldn't remove that provision, and it had been in the proposed SAIL order, even though it wasn't part and parcel of the SAIL motion and the Asset Purchase Agreement. Just the mechanics of that in the real world, that's what happened with that situation. But one of the things to mention as well, Judge, with regard to this public policy issue, and I understand that part of the problem is public interest. I think that Judge Simando was concerned during his colloquy with buyer's counsel because he never got a straight answer as to what they were going to do with the property. And he pushed a little bit. And I think he actually even said on the record, you know, I'm a little bit concerned with this. I'd really like to have a little more certainty here to know what's going to happen with this property. He never got it. And I think he made the judgment that notwithstanding that this was, you know, this is all we had to go forward with, and so we're going to go forward with it. But I don't think there was any record with regard to public interest, and there clearly was no record with regard to potential employment, because I recall Judge Simando asked that question concisely, and there was no commitment whatsoever from the buyer. They said they were going to make it into a university, a water park, a hospital, any number of things. But isn't it fair to infer that as long as they get it operational doing something, it will cause jobs to exist and hence reemployment in a community that is just so economically challenged right now? I mean, it's a fair inference. It's a fair inference. But to put a point on that very specifically, if IDA was allowed to reopen and we could reopen, we would employ 200 people right away. In fact, they would have every interest to do it as quickly as possible to catch the upcoming summer season. So the reality is that if that's a public policy concern, a public interest concern, if you allow IDA to open, that gets done, and at least there's some people working there, presumably there are some people there, but nobody there in terms of safety and so forth. And to put a point on some of this adversary proceeding, because it becomes, I think, it's almost counterintuitive that IDA should not have moved before Revel 1 and Revel 2 to enforce our rights under the bankruptcy code. The reason we had to move was because we had rights under 365. And, for example, immediately when the debtor shut down the location in early September, we moved before the court under actually 365 D3 on the position that the debtor was required, while the lease was still in existence, to meet its obligations under the lease and provide to us, among other things, utilities and security and so forth. We also then said, and by the way, if you're going to reject anyway, we asked the court not to determine that it's a lease, but to determine that if you reject it, and we elected under H, and it's literally in the text of our relief, we're asking you to determine as a matter of fact and law that a utilities, and this really is an issue of first impression, we found very little case law on this, that the utility easement would be considered to be a right in and a permit to the real property to allow us to continue to operate and work with the utility company. We also indicated as an alternative that we had looked at, but it was going to be expensive, to pay our own source of utilities and power into the premises. With time limited, I just want to focus in on the things that may be helpful decisions. Let's say we accept the premise that the fact of the filing, and taking account of the explanations for it, but the filing of declaratory judgment action is enough of an objective basis for the district court to conclude that there's a bona fide dispute. That puts us into looking at adequate protection. I don't see the transcript of the January 5th hearing among the exhibits that we've received. Are you able to point us to someplace in the record that you've been perhaps able to find over the course of argument where that request was made by IDEA, because the request is a sign of that protection coming into play under the terms of 363E? Judge, I would have to have the opportunity to look at the transcript again and be able to answer you more tenderly. I don't off the top of my head recall when I might have done, but please understand that that hearing on the 5th was not procedurally very well set up in terms of what was going to be considered. It was a sale motion, not a rejection motion. We would have made our argument for adequate protection in the rejection motion. In fact, as I understand it, Judge Burns, in fact, indicated that with regard to the debtor's application to settle with the secured party and with the committee that's on for, I think, next Wednesday the 11th, that was the time in which the various parties, including the energy people, and we should make an application for adequate protection with regard to an interest in the sale proceeds. Are you saying that you were directed when to make a request? When you said on your initial argument about this adequate protection, we wouldn't have raised it if we were there on a rejection motion, but the sale, the statutory provision to deal with the sale had its own provision about adequate protection. And so that's, I guess, what we're all driving at is if there was no request for adequate protection in connection with the sale, then we cannot criticize any of the district court on that subject when nobody asked for it, so you're not entitled to it because you hadn't asked for it at the time, correct? If, in fact, we were required to ask at that time explicitly. It says at some time. I understand. I think, and I'd want to have a chance to look at some of the case law. I would think that given this type of sale process and given the experience of counsel and given the experience of the court that it would have been clear that at least implicitly if they were going to rule under 360, I'll tell you where I think we did mention the judge. On the 5th, I recall arguing before Judge Burns, we did go into some detail, I went into some detail on the Dishy case. Will counsel please submit to us immediately after argument some record citation of where this issue was raised before the bankruptcy court? Sure. I will specifically do that, but I do recall mentioning Dishy in the context of the possession being adequate. Now, if that's viewed as being an implicit request, that may be the extent of it, but I will certainly do that, Judge. Let me see if I can make some sense of all this. You have to file a request for adequate protection if there is a rejection, and you can file it under 363E at any time, but at some point the concept of latches takes over. So you could probably at the rejection hearing two weeks from now file, if we lose, we need adequate protection, and the only adequate protection, my guess is your argument would be, is possession. That's true. Judge, at no time this property would have been sold, supposedly on Monday the 9th, pursuant to a sale order, and what does a sale order say with regard to adequate protection rights of lessees? I don't recall the sale order saying anything specific. I believe the ruling that was made implicitly by the bankruptcy judge was that the unsecured claims, the way the, I know Your Honors might be aware of this, but sometimes the bankruptcy court has a sort of a general colloquy of different parties participating, and in response to a sort of a different question, counsel for the committee said, you know, Judge, one of our concerns is if you allow rejection damages for all these tenants, you're going to wipe out the pool of a bunch of creditors, you're going to increase it by tens of millions of dollars and never it's going to affect us. So that issue was raised, but essentially the court seems to suggest, well, the unsecured claim in and of itself is sufficient for adequate protection, which. . . And the argument, I can just see, you just foresee it being made at the rejection hearing, is that with regard to adequate protection, this place has been shuttered since last September, too, and ten times zero is zero in terms of your value. Except, Judge, if you look at the equities of what happened, we were prepared and we went to court with a, I would say, proceeding immediately after the shutdown for permission for the court to let us run and, in fact, to compel the debtor to go forward. The excuse, I shouldn't say excuse, the reason they gave, they said they were not allowed to do it pursuant to the local gambling authorities because since there were gambling machines in the premises, even though not in our premises, because it would be cordoned off, arguably, that we couldn't open. That's what they said. So we were restrained from opening not because of anything we wanted to do. In fact, we had gone to court and we mandated that to go to court after the potential rejection to open up again. And we can still open up again. And so we've been constrained by that. What's happened to this entire case, Judge, is that this issue of the 365, 363 issue, of course, you know, it's a first impression in this circuit. There's one circuit case nationwide. It's an issue that's going to come up quite a bit, as the judge mentioned. In promise, it came up in the context of a 365N issue. Again, questions about the counterparties to debtor landlords or debtor less than source have. That's a real issue. And we have a situation where we're talking about public interest and public policy. If there's no certainty of a commercial tenant to be able to stay in possession under the law, it will affect both commercial tenants and those who lend and finance commercial tenants. So there's a real significant public effect from allowing a result, due respect, a results-oriented decision to self, and self had the right thing to do here. And in addition, there are real property rights, including those, presumably, the reason why we have an adequate protection and many kind of equal equivalent is the If you have some shadow of a Fifth Amendment right, you do not have your property taken. The response to that is pretty simple only, that it's closed. It's done. And, you know, nothing more really can be done. If it was so important, the other three groups of lessees would have filed an appeal from the denial of the stay. Would they not? Judge, as you might guess, I hesitate to comment on what they did or didn't do. We felt it important enough to do it. And, you know, as we were preparing for today's hearing, we, of course, read a number of your others' opinions on equitable mootness in the plan context. But also in that context, there's a reference to essentially what I call legal mootness. That is, if you have an unstayed sale order and they go forward, you're kind of out of luck. And the remedy for the unstayed sale order is, obviously, to stay the sale order and give us a chance to get to court. And recall, please, that we put it in the certification. In the Trump bankruptcy case, a couple of casinos down, the Delaware Bankruptcy Court allowed the restaurant to open, notwithstanding the fact that the casino was closed. Because a similar situation was kind of interesting. They went to state court in some way to get that relief. And I know it was temporary in the beginning. I don't know what happened in the ultimate case. But both as a physical matter and also as a legal matter, it was possible to do that. And all we're asking for is to have our real property rights recognized as protected by the Bankruptcy Code, especially when the other provisions that allow an override weren't met. Obviously, secure parties can be crammed down and those types of things. I understand the Bankruptcy Code and process can adjust people's state law rights, but only if they're properly done under the Bankruptcy Code. And here, there's inadequate due process with regard to the procedure, with regard to evidence, with regard to a variety of things. And we don't think it's – we can't believe it's just not fair to have a situation where what could happen is we put in money, we have a valuable lease, now this goes forward, and the current new buyer flips management to Hard Rock, and they make the profit that we put in to start. Your argument is an irreparable harm. And actually, your argument as to why the public policy weighs in your favor is that this supposed disastrous effect it'll have as a precedent for commercial real estate development. But we've got, on the other hand, Revel pointing to the loss of hundreds if not thousands of jobs, the substantial detriment it would cause to Atlantic City, and the hampering of the reorganization of other casinos. So, on the public policy front, we're weighing a sort of theoretical harm to commercial real estate development with a real tangible harm to Atlantic City and the region. I understand that, but just to put a point on it, Judge Sanando did not get an answer from the Buyer's Council as to how many jobs are going to be saved. And you could see from the way he asked the questions, he wanted to have some comfort that this was the right way to go, and he didn't get that. In fact, McConaughey- But he must have gotten it because he sounded persuasive. Well, absolutely. I know he did, but McConaughey, before he ruled the next day, he asked us what the procedure was for remanding parts of this to go back down to Judge Burns to determine some of the issues. He was really uncomfortable, and he said, on the record, that he was uncomfortable with what was happening specifically with IDEA. It wasn't he was concerned that they'd put in $16 million and wouldn't get nothing from it. If you had an unsecure claim- Why didn't you do that, then? Why didn't you put the money in? Because he was inviting suggestions for remand to develop the record and cure the alleged procedural deficits that you suggest occurred, and I'm not saying that they did, but you suggest they did. Why didn't you say, okay, we'll take that? We'll go back and actualize our pursuit process. Well, our sense was that he was concerned and asked us what the procedure was, and I had indicated to him that I recalled in a different bankers' case called Claudida, in which some of the same parties were involved, that Judge Pisano, in fact, did just that. There was an appeal from Judge Ferguson. Okay, so why didn't we- I assume he didn't think- Did you say yes, Judge, on favor of that, or whoever was speaking on Friday at the time? I just don't- I think it was sort of implicit that we would have loved him to have done that. Did we actually say, please do that as an alternative? I truly don't recall. That's fine. Thank you. I totally understand. Thank you. Go ahead. One last question. You seem to agree in your papers that under Bankruptcy Rule 8007, that a bond is required after extraordinary circumstances, a stay is granted? Yes, Judge, I mean, we believe that rule obviously applies, and we suggested that under this case, where among the relief we're asking for is for this court to either itself stay in the sale order or temporarily stay in the sale order and remand and direct Judge Simandl to stay in the sale order, that with regard to just that provision that deals with the 365 issues, that there'd be no harm, no damages, because the buyer never contracted for that right. Were you put in no evidence in the record? I can tell that the imposition of a bond at a purchase price, let's say, would pose a financial harm to your client, that that would be a hardship. Why shouldn't the full amount of the purchase price be set if we were inclined to grant a stay and require a bond? It is our understanding that the $10 million that serves as the deposit and could be lost if the buyers will go forward, was the damage determination contracted for by the debtor? The debtor could have made another deal. The debtor's deal was essentially you put down $10 million, you have an option to purchase. If you don't purchase, we get that amount. That's what their damages are here. There's no guarantee this is going to close anyway, and there's also no record that shows that there are other people that are interested in getting this property that are outside. If there were other people, they would have come out, you would think, before now. Yes, Judge, I agree that that argument gets a little more tenuous as we go along, but for what it's worth,  nothing's come forward, I understand that, but there's no certainty that this whole thing is going to collapse. It wouldn't be a better deal to allow the buyer to close or not to close, allow our rights to be excised so we can protect those rights, and to allow us to even go into the possession of the premises, and whoever comes in either can use us complimentary with them or use us independently. We're essentially a standalone. We could be a standalone. What happens, there's no question that Revel didn't work, and Revel didn't work for whatever reason on a market basis that's way beyond my pay grade on this thing. There's two others down the street that have. But we had heard, and again, it's sort of just by word of mouth, that what happened was the kind of people who liked our facilities were a different crowd than would go to Revel. In fact, they'd go to Revel and then rather they'd go to our facility and then go over to the Borgata. I don't know really the casinos that well, so I wouldn't know the essence of what those things were, but that's what we've heard. So we should not be harmed by the failure of the people who operated the casino when we ran a profit-making, in fact, it's not before your honors at all, but there's other litigation in the bankruptcy case because we are holding $8 million of funds from the operations of the IDEA for the last couple of months, several, 15 months, I'm sorry. So you're holding it because that would have been rent due, so to speak? No, we're holding it because, actually, we're holding it under a total agreement based upon the administrative proceeding we raised. So we had three of these administrative proceedings. Yes, it has to do with recoupment, settle rights, those things, but it's pursuant to an agreement of actually Judge Wisner and Revel 1. All right. Thank you. Thank you. And one final question. In Revel 1, you said that you filed a declaratory judgment action. We did. Was that a direct and adversary proceeding? I think we filed one amendment. In that proceeding, did you ask for a declaration that there is a lease entitled to 365 rights? I know in the first draft we did, in the main complaint we did not. I will check it, but I don't recall, Judge. If we did, and none of that, would you ask? We may have done it in the amended first complaint, and I think there was a denial, but it was just typical. No, it's not. That's what Mr. Zakia said. Yeah. Mr. Zakia, let me ask you on the asset purchase agreement, what is the provision you were referring to? Two provisions, Your Honor. Section 5.9, which is found on page 22, entitled Lease of Encumbrances, and it's short, so I'll just tell you what it says. Sellers' obligation to deliver the assets free and clear of any encumbrances, which is a defined term, other than permitted encumbrances, also a defined term, and assumed liabilities, shall be limited to sellers' commercially reasonable efforts to obtain the sale order that provides for the delivery of assets free and clear. And then it goes on. And then if we look at Section 1.1B of the schedules, it lists permitted encumbrances, and IDA boardwalk lease is listed therein. So, again, I don't want to detract from the fact that we believe any stay would work in irreparable harm or rebel, but at least with regard to our ability to claim the $10 million deposit, a modification of the stay to simply stay the provision about sale free and clear would be important for that. So I'll just repeat that again. If the stay, which we don't think there should be one, but if there was one, and if it were limited to, I believe it's Paragraph 14 of the sale order, Paragraph 14 of the sale order, which is the paragraph that permits the sale free and clear, and I would suggest it should be further limited to IDA boardwalk, the only appellant here. So if the stay were limited to IDA boardwalk's possessory rights that were being wiped out by Paragraph 14, the extreme harm to rebel while still existing would be mitigated by our ability to claim the $10 million deposit. Okay. Thank you. And thank you to both counsels. If I may, I apologize for coming back up, but I'm advised by my co-counsel, and we'd be happy to clarify this, that, in fact, IDA did request adequate protection of Docket Number 144, which was a joinder to a request made by the many tenants under Docket Number 137. Now, I'd like to confirm that, and we'll do that in writing, but that's what I understand. And that was done on what day? I don't know that, Judge. Okay. So it's Docket Number 144 in Rebel 2? In July. In July. Yes. On June 19th. Is that right? Rebel 2. Okay. Okay. Thank you, Judge. If you would send that to us under a 28-day letter. Sure. We'll try to get that to you today if we can. That's great. Okay. Thank you. We will – first of all, I want to thank both counsel for very well-presented arguments on such short notice. And as they say in South Philly, you've done good. And I much appreciate it. It's always good to have good counsel before you. We will try to make a decision and have it communicated to you by 5 p.m. today. I would ask if counsel would get together with the folks' office and arrange for a transcript to be prepared for this oral argument with the cost to be split evenly. And also, if I could ask both counsel to come up before us, if you would, please, off the record. Thank you. You're very welcome. Thank you. We shall take these. Monday, February 9, 2015 at 11 a.m. Monday, February 9, 2015 at 11 a.m. Monday, February 9, 2015 at 11 a.m. Monday, February 9, 2015 at 11 a.m. Monday, February 9, 2015 at 11 a.m. Monday, February 9, 2015 at 11 a.m. Monday, February 9, 2015 at 11 a.m.